## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **KYERAN W.,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 1:24-cv-00187-JCB** |
| **FRANK BISIGNANO,[1] Commissioner of Social Security,** | |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. 73, all parties have consented to Judge

Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[2]

Before the court is Plaintiff Kyeran W.'s ("Plaintiff") appeal of Commissioner of Social Security

Frank Bisignano's ("Commissioner") final decision determining that Plaintiff was not entitled to

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[3] After careful

consideration of the written briefs and the complete record, the court concludes that oral

argument is not necessary. Based upon the analysis set forth below, the court affirms the

Commissioner's decision.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), he has been substituted as the Defendant in this case. ECF No. 17.

[2] ECF No. 5.

[3] 42 U.S.C. §§ 1381-1383f.

**PROCEDURAL BACKGROUND**

On September 15, 2022, Plaintiff applied for SSI,[4] which the Social Security Administration denied both initially[5] and upon reconsideration.[6] Plaintiff later appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[7] The ALJ denied Plaintiff's claim for SSI benefits,[8] and Plaintiff appealed to the Appeals Council.[9] The Appeals Council sustained the ALJ's decision, thus making it final for purposes of judicial review.[10] Plaintiff timely filed this action seeking judicial review of the Commissioner's final decision.[11]

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a

---

[4] ECF No. 10, Administrative Record ("AR ___") at 168-77.

[5] AR at 68.

[6] AR at 78.

[7] AR 31-67.

[8] AR 11-30.

[9] AR 1-6.

[10] 42 U.S.C. § 405(g).

[11] ECF No. 1.

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[13] 42 U.S.C. § 405(g).

preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. If he is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[19]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any

---

[14] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[17] 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. § 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[19] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(ii).

gainful activity, regardless of his or her age, education, or work experience."[20] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[21] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[22] An individual's RFC is his greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from his impairments.[23] In making that determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[24]

For the fourth step, the claimant must show, given his RFC, that his impairments prevent performance of his "past relevant work."[25] "If the claimant is able to perform his previous work, he is not disabled."[26] If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability."[27]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[28] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of his age,

---

[20] 20 C.F.R. § 416.925(a); *see also id.* § 416.920(a)(4)(iii).

[21] *Williams*, 844 F.2d at 751.

[22] 20 C.F.R. § 416.920(e).

[23] *Id.* § 416.945(a)(1), (b)-(c).

[24] *Id.* § 416.945(a)(2).

[25] *Id.* § 416.920(a)(4)(iv).

[26] *Williams*, 844 F.2d at 751.

[27] *Id.*

[28] *Id.*

education, and work experience."[29] If it is determined that the claimant "can make an adjustment

to other work," he is not disabled.[30] If, on the other hand, it is determined that the claimant

"cannot make an adjustment to other work," he is disabled and entitled to benefits.[31]

**ANALYSIS**

Plaintiff asks this court to reverse and remand the Commissioner's decision for three

reasons. First, Plaintiff contends that the ALJ failed to properly evaluate the combined opinions

of Drs. Nancy Cohn ("Dr. Cohn") and Garrett Chesley ("Dr. Chesley"), and the separate opinion

of Dr. Ryan Houston ("Dr. Houston").[32] Second, Plaintiff argues that the ALJ failed to

adequately consider the severity of Plaintiff's mental impairments at Steps 2 and 3 of the five-

step sequential process provided in the Standard of Review section above.[33] Finally, Plaintiff

asserts that the ALJ failed to adequately evaluate the impact of Plaintiff's sensorimotor

impairment when determining his RFC.[34] Each argument is rejected below.

**I.    The ALJ Properly Evaluated the Opinions of Drs. Cohn, Chesley, and Houston.**

Although Plaintiff contends generally that the ALJ failed to adequately evaluate the

respective opinions of Drs. Cohn, Chesley, and Houston, Plaintiff actually makes two separate

arguments. First, Plaintiff contends that the ALJ failed to fill in the analytical gaps that the

opinions of Drs. Cohn and Chesley allegedly left in their Mental Residual Functioning Capacity

---

[29] *Id*. (quotations and citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

[30] 20 C.F.R. § 416.920(a)(4)(v).

[31] *Id*.

[32] ECF No. 12 at 11-19.

[33] *Id.* at 19-23.

[34] *Id.* at 23-25.

Assessment ("MRFCA").[35] Second, Plaintiff claims that the ALJ failed to adequately consider the supportability and consistency of Dr. Houston's opinion as a whole and the limitations on Plaintiff that Dr. Houston determined.[36] As shown below, both arguments fail.

A. The ALJ Had No Obligation to Account for Gaps in the MRFCA Because Drs. Cohn and Chesley's Narrative of Plaintiff's Moderate Limitations Adequately Encapsulated Their Observations, and the ALJ's RFC Appropriately Considered Those Findings.

The ALJ was not obligated to account for gaps in the MRFCA because Drs. Cohn and Chesley's Section III findings adequately encapsulated their Section I observations. For context, an MRFCA contains two relevant sections for purposes of judicial review: Section I and Section III. Section I lists several limitation categories that the Commissioner uses to evaluate a person's ability to work. MRFCA-producing mental health practitioners use the Section I limitation categories "chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of the[] pertinent mental activities and the claimant's . . . degree of limitation."[37] Section III "is the narrative," in which mental health practitioners record their "formal mental RFC assessment," which the ALJs use "as the assessment of [the] RFC."[38]

Coincidentally, judicial review of the ALJ's consideration of an MRFCA also consists of two parts. First, the court must review the MRFCA itself because the MRFCA's analysis greatly affects how much discussion an ALJ must devote to explaining the reason for adopting or refusing to adopt certain non-exertional limitations in the MRFCA. For example, if a "Section III

---

[35] *Id.* at 12-18.

[36] *Id.* at 18-19.

[37] *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (quoting the Commissioner's Program Operations Manual Systems ("POMS") DI 25020.010).

[38] *Id.*

narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding."[39] Under such circumstances, the burden would fall on the ALJ to fill in the gaps left between the MRFCA's Section I and Section III findings. However, if the MRFCA's Section III narrative adequately encapsulates the moderate limitations in Section I, "the ALJ may properly look to only to the Section III narrative as the psychologist's opinion regarding mental RFC."[40] Thus, the court reviews Drs. Cohn and Chesley's MRFCA to determine how much analysis the ALJ must provide in his RFC decision addressing the MRFCA's moderate limitations.

Second, once the court assesses the level of analysis the ALJ should provide regarding the moderate limitations disclosed in the MRFCA, the court then considers whether the ALJ's analysis in the RFC itself adequately addressed those moderate MRFCA limitations. The court reviews the ALJ's decision to determine whether he adequately resolved conflicts in the evidence about how to address those moderate limitations[41] and whether he explained why the RFC did not adopt certain uncontested limitations provided in the MRFCA.[42] The court analyzes both issues below and finds that: (1) Section III of the MRFCA adequately encapsulated its Section I

---

[39] *Id.*

[40] *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015).

[41] *Carver*, 600 F. App'x at 620 (affirming the ALJ's decision where ALJ adequately discussed conflicting evidence when formulating limitations in RFC).

[42] *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) (remanding ALJ decision for failing "to explain why he rejected some" of the MRFCA restrictions regarding moderate limitations "while seemingly adopting others").

findings, and (2) the ALJ's limitations in the RFC appropriately considered the MRFCA's findings.

> 1. The MRFCA's Section III Narrative Adequately Encapsulated Section I's Moderate Limitation Findings.

Contrary to Plaintiff's arguments, the MRFCA's Section III narrative adequately encapsulated its Section I moderate limitation findings related to concentration and pace, which allowed the ALJ to look only to Section III when considering the limitation he placed in Plaintiff's RFC. The "adequate encapsulation" standard balances the Commissioner's intention for the Section III narrative to serve as the basis for the ALJ to adjudicate the claim while recognizing that the ALJ must consider the entire record[43] and not "turn a blind eye to moderate Section I limitations."[44]

By illustration, consider *Natalie L. v. Kijakazi.*[45] In that action, Section I of the MRFCA found moderate limitations under the general category of "concentration and persistence."[46] As to specific sub-categories within the general category of "concentration and persistence," the MRFCA's Section I findings further noted moderate limitations in the plaintiff's ability to: "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and

---

[43] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (stating that the record must show that the ALJ considered all the evidence presented, but the ALJ is not required to discuss every piece of evidence).

[44] *Carver*, 600 F. App'x at 619.

[45] 631 F. Supp. 3d 1114 (D. Utah Sept. 28, 2022) *aff'd sub nom Lager v. Comm'r of Soc. Sec. Admin.*, No. 22-4116, 2023 WL 6307490, at *1 (10th Cir. 2023).

[46] *Natalie L.*, 613 F. Supp. 3d at 1119.

"complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[47] The MRFCA's Section III narrative noted that: (1) the plaintiff's "pain and other symptoms fluctuate and trigger depression and worry," (2) "while she alleges memory problems, the present exam does not support that" because another physician "opined that her memory and concentration were normal . . . . She is appropriate for low stress work that can be learned in 1 to 3 months" and (3) the plaintiff "appeared to be . . . working very hard at the memory tasks but would have difficulty sustaining the type of energy in a 40-hour work week."[48] Although the Section III analysis did not specifically parrot the findings in Section I and address them one by one, the district court found that was unnecessary to achieve adequate encapsulation because Section III's narrative section "offered relevant conclusions."[49]

On appeal, the Tenth Circuit affirmed the district court's decision.[50] As to the issue of adequate encapsulation, the Tenth Circuit specifically noted that because "the narrative section of the MRFCA forms adequately addressed the moderate limitations the reviewers found," there was no need "to address [the plaintiff's] argument that the ALJ was required to further address the Section I limitations in formulating the RFC."[51] Thus, when reviewing whether an MRFCA's Section III narrative adequately encapsulates moderate limitations in Section I, the court does not look in the Section III narrative for a line-by-line analysis of each Section I moderate limitation.

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Lager*, 2023 WL 6307490, at *1.

[51] *Id.* at *2, n.2.

Instead, the court looks for whether the Section III narrative provides "relevant conclusions" that address the Section I moderate limitations. And if they do, the ALJ has no obligation to fill in any analytical gaps between the Section I findings and the Section III narrative in the MRFCA.

The Section III analysis in this action adequately encapsulated the moderate limitations noted in Section I. Similar to *Natalie L.*, under the general heading of "sustained concentration and persistence," Section I lists eight sub-categories of limitations that a mental health provider must assess.[52] Drs. Cohn and Chesley marked several of those Section I sub-categories as "Moderately Limited," but only three are at issue on judicial review: (1) "The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (2) "The ability to sustain an ordinary routine without special supervision"; and (3) "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[53] Drs. Cohen and Chesley's Section III narrative provided that Plaintiff:

> has been diagnosed with ADHD and medication is described as helpful. The [Plaintiff] has not been exposed to work-like demands but retains the capacity to learn, understand, recall and complete tasks that are simple, repetitive, predictable and can be learned in up to one month. He is in mental health treatment utilizing cognitively-based interventions, with no indication of either cognitive or attentional struggles during 60 minute sessions.[54]

---

[52] AR at 75, 85.

[53] *Id.*

[54] *Id.*

10

This narrative adequately encapsulates each of the contested Section I findings because if Plaintiff can learn, understand, recall, and complete simple tasks that can be learned in one month, then Plaintiff is implicitly able to sufficiently attend and sustain work long and consistently enough to learn those tasks. Indeed, if Plaintiff were unable to show up to work or took too many mental-health-related breaks, then finding that he could learn tasks within a month makes no sense. To further bolster that point, Drs. Cohn and Chesley mentioned Plaintiff's success in demonstrating that his psychologically-based symptoms are not interfering with his cognitive or attentional abilities during his 60-minute therapy sessions.[55] Additionally, the Section III analysis recognizes that Plaintiff has ADHD and has never been required to find employment, which explains why Section I considers him "moderately limited" in his "ability to sustain an ordinary routine without special supervision."[56] The Section III narrative then discusses how Plaintiff may require up to one month to learn "simple, repetitive, predictable" tasks, which is also relevant to the special supervision issue.[57] In other words, the narrative in Section III offers relevant conclusions that address each of the moderate limitations about which Plaintiff complains on appeal. This means that the Section III analysis adequately encapsulates the contested moderate limitations in Section I, and the ALJ did not have a duty to further discuss Section I limitations when formulating the RFC.[58]

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Lager*, 2023 WL 6307490, at *2 n.2.

2.  <u>The ALJ's RFC Adequately Addressed the Limitations Referenced in Drs. Cohn and Chesley's MRFCA</u>.

The ALJ adequately addressed Drs. Cohn and Chesley's opinions in the MRFCA and appropriately accounted for those opinions in the RFC. Under the relevant regulations, an ALJ is required to consider certain factors when evaluating medical opinions, like those Drs. Cohn and Chesley provided in the MRFCA.[59] Those factors are: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.[60] The most important factors for an ALJ to consider are supportability and consistency.[61] An ALJ is required to articulate the persuasiveness of all medical opinions and prior administrative medical findings in a claimant's case record.[62] In support of the persuasiveness determination, an ALJ is required to articulate only the consideration of the factors of supportability and consistency.[63] An ALJ may, but is not required to, articulate the consideration of the remaining factors.[64] Thus, when evaluating medical opinions, an ALJ is required to articulate the consideration of: (1) the persuasiveness of the opinions and findings, (2) the factor of supportability, and (3) the factor of consistency.

---

[59] 20 C.F.R. § 416.920c(a).

[60] *Id.* at § 416.920c(c)(1)-(5).

[61] *Id.* at § 416.920c(b)(2).

[62] *Id.* at § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").

[63] *Id.* at § 416.920c(b)(2).

[64] *Id.*

As to Drs. Cohen and Chesley's MRFCA, the ALJ found their opinions "generally persuasive."[65] After listing what they reviewed and discussed in their MRFCA, and the record evidence that supported it, the ALJ concluded that their conclusions were "generally consistent with the evidence they had before them."[66] The ALJ also noted the limitations of Drs. Cohen and Chesley's evaluation due to neither having the opportunity to examine Plaintiff nor being privy to certain evidence adduced at the ALJ hearing.[67]

In addition to appropriately considering Drs. Cohn and Chesley's opinions in the MRFCA, the ALJ considered the conflicting record evidence as to "concentrating, persisting, [and] maintaining pace."[68] The ALJ acknowledged that Plaintiff suffered from "moderate" as opposed to the more serious "'marked or extreme'" limitations in this area and discussed Plaintiff's self-assessment that "his impairments affect his ability to complete tasks, concentrate, understand, and follow[] instructions."[69] This self-assessment, the ALJ pointed out, was inconsistent with other medical evidence, which the ALJ then discussed.[70]

Based on this and other evidence in the record, the ALJ specifically incorporated several "nonexertional limitations" into his RFC determination. Consistent with the Section III narrative in the MRFCA, the ALJ acknowledged Plaintiff's ADHD[71] and that Plaintiff can "understand,

---

[65] AR 22.

[66] *Id.*

[67] *Id.*

[68] AR 18.

[69] *Id.*

[70] *Id.*

[71] AR 20.

remember, and carry out simple, routine, and repetitive tasks."[72] The ALJ incorporated the Section III findings by limiting Plaintiff to "simple, goal-oriented work but not assembly line-paced work," and that Plaintiff can "occasionally interact with co-workers and supervisors" and "have brief and superficial interaction with the general public" while adapting "to routine changes in the work place."[73] The ALJ's analysis is fully consistent with the Commissioner's regulations for evaluating medical opinion and for formulating an RFC.

Nevertheless, Plaintiff contends that the ALJ's RFC analysis is inadequate because it failed to explain why the RFC limits Plaintiff to only "occasional" interaction with supervisors when Section I of the MRFCA states that Plaintiff is "moderately limited in his ability to work without *enhanced* supervision."[74] There are at least two problems with Plaintiff's argument. First, where, as here, the MRFCA's Section III narrative adequately encapsulates its Section I findings, the ALJ considers only the narrative in Section III, which, as shown above, the ALJ clearly did.[75] That should end the matter.

Second, even if the court assumes that this Section I finding is something the ALJ should have considered independently from the Section III narrative, that argument fails. The court highlighted the word "enhanced" in the above quotation of Plaintiff's brief because the phrase "enhanced supervision" does not appear in Section I of the MRFCA. Instead, the relevant portion

---

[72] *Compare* AR 19 *with* AR 75, 85 (finding that Plaintiff "has been diagnosed with ADHD" and "retains the capacity to learn, understand, recall, and complete tasks that are simple, repetitive, predictable").

[73] AR 19.

[74] ECF No. 12 at 17 (emphasis added).

[75] *Fulton*, 631 F. App'x at 502.

of Section I to which Plaintiff is referring actually says: "[t]he ability to sustain an ordinary routine without *special* supervision."[76] As evidenced by Plaintiff's brief—which contains no citations to authority for this argument—the Commissioner has not promulgated any regulation or provided a single policy statement defining the term "special supervision." And the court has searched in vain for a single court decision providing a definition. But even if this court, in the absence of a specific definition, applies the "plain and ordinary meaning" of this phrase,[77] "special supervision" does not necessarily mean "extra time with a supervisor." In fact, Webster's Third New International Dictionary defines "special" as "distinguished by some unusual quality," "regarded with particular favor or affection," "relating to a single thing or class of things," "supplemental to the regular," "confined to a definite field of action," and "continuing particulars."[78] None of these definitions carries a temporal component that conflicts with the ALJ's RFC limitation of "occasional interaction" (i.e., one-third of a workday) with a supervisor.

Given this dearth of authority, the court is hard pressed to find that occasional interaction with supervisors is so clearly contradictory to "special supervision"—whatever that term means—to reverse and remand the ALJ's decision, especially where the ALJ had no obligation to look at the MRFCA's Section I limitations given the adequacy of the Section III narrative. What is evident from the record as a whole, however, is that the ALJ discussed both supportability and consistency regarding Drs. Cohn and Chesley's opinions, weighed the conflicting record

---

[76] AR 75, 85 (emphasis added).

[77] *See, e.g.*, *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47 (1989) ("We have often stated that in the absence of a statutory definition we start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." (citations and quotations omitted)).

[78] *Special*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2186 (1993).

evidence, considered the MRFCA, and made his RFC finding, which is supported by substantial

evidence. Thus, Plaintiff's challenge to the ALJ's consideration of Drs. Cohn and Chesley's

opinions fails.[79]

B. The ALJ Had No Obligation to Consider Dr. Houston's Opinion Because It Was Not
Medical Opinion Under the Commissioner's Regulations.

The ALJ's refusal to consider the supportability and consistency of Dr. Houston's opinion

is not error. Congress set the limit of this court's review of the Commissioner's disability

decisions. Specifically, Congress confined judicial review as follows:

> The findings of the Commissioner of Social Security as to any fact,
> if supported by substantial evidence, shall be *conclusive*, and where
> a claim has been denied by the Commissioner of Social Security . .
> . the court shall review *only* the question of conformity with such
> regulations and the validity of such regulations.[80]

In other words, judicial review "is limited to determining whether substantial evidence supports

the agency's factual findings and whether the agency applied correct legal standards"[81] in

accordance with the Commissioner's duly promulgated regulations. The Commissioner's

regulations as to what constitutes a "medical opinion" defines that term as "a statement from a

---

[79] Plaintiff urges the court to follow the District of New Mexico's approach to this issue. ECF
No. 16 at 3. The court declines to do so because the District of New Mexico appears to apply
"adequate encapsulation" for Section III narratives to mean "near perfect encapsulation." *See,
e.g.*, *Ortiz v. O'Malley*, No. 1:22-CV-00660-LF, 2024 WL 278290 (D.N.M. Jan. 25, 2024). In
*Ortiz*, the Section III narrative provided a robust analysis of the moderate limitations in Section I
of the MRFCA—certainly more detailed than in *Natalie L.*—but the court still found that the
Section III analysis was inadequate, as was the ALJ's failure to fill in the gaps. *Id.* at *5-6;
*Compare id.* at *5 with *Natalie L.*, 631 F. Supp. 3d at 1119. The Tenth Circuit affirmed the
district court's "adequate encapsulation" finding. *Lager*, 2023 WL 6307490, at *2 n.2.
Consequently, the court is not persuaded to follow the approach of its learned colleagues in the
District of New Mexico.

[80] 42 U.S.C. § 405(g) (emphasis added).

[81] *Carver*, 600 F. App'x at 618.

medical source about what [the claimant] can still do despite [his or her] impairment(s). . . ."[82] A medical opinion will, for example, address physical activities like sitting and standing or mental activities like understanding and concentrating.[83] Opinions from even very qualified medical providers will not constitute "medical opinion" unless those providers opinions provide the information that the regulations require.[84]

Dr. Houston examined Plaintiff in his home in 2018 when Plaintiff was in 9th grade. Although Dr. Houston performed an extensive analysis to diagnose Plaintiff's conditions at that time, nothing in Dr. Houston's report provides any information as to what Plaintiff "can still do despite his limitations."[85] In fact, what Plaintiff can do in a work environment is not an issue Dr. Houston addressed at all. Consequently, Dr. Houston's dated, albeit detailed, analysis relating to academics is not "medical opinion" for work-related disability under the Commissioner's regulations, and the ALJ had no duty to consider it.

## II.    The ALJ Properly Analyzed Plaintiff's Mental Health Limitations at Steps 2 and 3.

The ALJ's analysis at Steps 2 and 3 was appropriate, and Plaintiff's arguments to the contrary are merely an invitation for the court to reweigh the evidence. Instead of arguing that the ALJ failed to take any of the procedural inquiries required under steps 2 and 3, Plaintiff argues that the ALJ simply ignored evidence that shows that Plaintiff suffers from either a

---

[82] 20 C.F.R. § 416.913(a)(2).

[83] *Id.* at § 416.913(a)(2)(i).

[84] *Staheli v. Comm'r of Soc. Sec. Admin.*, 84 F.4th 901, 907 (10th Cir. 2023) (holding that a medical doctor's opinion that did not state what the plaintiff could do despite her impairments was not "medical opinion" under the regulations).

[85] AR 299-311

marked or extreme condition that is "more severe" than the ALJ found.[86] Plaintiff provides four pieces of evidence that he claims the ALJ ignored and, had they been considered, would entitle Plaintiff to disability at step 3.[87] Specifically, Plaintiff claims that the ALJ paid short shrift to his purported inability to: (1) manage money, (2) lead an independent life and manage himself in the community, (3) dress appropriately and maintain good hygiene, (4) fill out his own function report without help.[88]

Although Plaintiff points to evidence in the Administrative Record that seems to support his assertions, the ALJ refers to this evidence too, but then discusses other record evidence in his decision that weighed in favor of "moderate" limitations instead of something more severe.[89] What is clear to the court is that the ALJ reviewed all the evidence but weighed it differently than Plaintiff wanted him to. That is not error because "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[90] The court declines Plaintiff's invitation to reweigh the evidence differently than the ALJ because that is improper under the substantial evidence standard.[91] Therefore, Plaintiff has failed to show that the ALJ's analysis at steps 2 and 3 is unsupported by substantial evidence.

---

[86] ECF No. 16 at 7.

[87] ECF No. 12 at 21-23.

[88] *Id.*

[89] AR 17-19.

[90] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

[91] *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (stating that reweighing the evidence is improper under substantial evidence review).

### III.    The ALJ Properly Declined to Include Exertional Limitations in the RFC Despite Plaintiff's Autism Spectrum Disorder.

The ALJ's decision not to impose exertional limitations in the RFC due to Plaintiff's Autism Spectrum Disorder ("ASD") was not error. Once again, Plaintiff's objections to the ALJ's decision amount to an improper invitation for the court to reweigh evidence. Although the ALJ recognized that Plaintiff had been diagnosed with ASD, the ALJ also found that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."[92] As to sensorimotor function, the ALJ mentioned that Plaintiff writes "stories that are 5,000 to 6,000 words in length" on his cell phone and then posts them online for others to see.[93] To put this in perspective, the court is using a full-size keyboard to produce this lengthy decision that contains far fewer than 6,000 words, inclusive of the caption, footnotes, and signature block. That Plaintiff can write stories of such length "several times a month"[94] on something as small as a cell phone keyboard clearly supports the notion that his motor skills are sufficient to work without the need for limitations. Plaintiff also reported playing video games for hours a day, which also suggests normal functioning sensorimotor skills.[95] Additionally, medical evidence

---

[92] AR 20.

[93] AR 17-18.

[94] AR 18.

[95] *Id.*

exists in the record showing that Plaintiff's motor strength was "normal,"[96] "no[t] unusual,"[97] and "unremarkable."[98]

Not surprisingly, conflicting evidence exists in the record as well. For example, Dr. Houston's report from several years ago, when Plaintiff was in 9th grade, recognizes that Plaintiff "seemed to have adequate gross motor abilities—though seemed to have some difficulties with fine motor skill."[99] And several places in the record state that Plaintiff himself reported having been in the 98th percentile for sensorimotor impairment.[100] However, there is no medical opinion substantiating that self-report through objective testing, and, curiously, even Plaintiff did not mark in his own Functional Report, which commenced his SSI case, that he has limitations "Using Hands," "Walking," "Standing," "Bending," "Reaching," "Lifting," "Squatting," or "Stair Climbing."[101] Thus, even Plaintiff's best evidence is, at best, inconsistent as to sensorimotor impairment.

From a judicial review perspective, the ALJ did exactly what he had to do with such conflicting evidence: weigh it and make a determination. Given the foregoing, and considering what the substantial evidence standards means, the court cannot say that the ALJ's refusal to exclude exertional limitations to address any sensorimotor limitations was in error. And this court again declines to reweigh the evidence in a manner that Plaintiff would prefer.

---

[96] AR 339, 341, 346, 450.

[97] AR 81 ("No unusual motor mannerisms exhibited during exam").

[98] AR 394, 397 ("Behavior and Motor Activity: Unremarkable).

[99] AR 299.

[100] AR 284, 287, 292, 295, 308.

[101] AR 222.

## CONCLUSION AND ORDER

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 12th day of August 2025.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge